**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STACY PENNING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

INSURANCEZEBRA, INC., d/b/a THE ZEBRA,

Defendant.

Case No. 3:25-cv-03531-WHO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: October 8, 2025
Time: 2:00 p.m.
Ctrm: 2 – 17th Floor
Judge: William H. Orrick

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFF HAS ARTICLE III STANDING ........ 2

II. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HIS PROTECTED COMMUNICATIONS ........ 6

A. Defendant Has Failed to Establish That Plaintiff Was On Notice Of Its Privacy Policy ........ 6

B. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purposes ........ 9

III. PLAINTIFF STATES A CLAIM UNDER THE ECPA AND CIPA § 631 ........ 11

A. Defendant Intercepted The "Contents" of Plaintiff's Communications ........ 11

B. Defendant Knowingly Assisted Facebook and Google In Violating CIPA ........ 13

IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 632 ........ 15

A. Plaintiff Has Alleged That His Communications With Defendant Were "Confidential" ........ 15

B. Plaintiff's Communications With Defendant Are Legally Protected ........ 16

C. Defendant Cannot Disclose Legally Protected Information Without Consent ........ 18

D. Defendant Recorded Plaintiff's Communications Without Consent ........ 18

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CA CONSTITUTION ........ 19

A. Plaintiff Has A Legally Protected Privacy Interest In His Personal Information ........ 19

B. Plaintiff Has A Reasonable Expectation In His Insurance Decisions ........ 20

C. Surreptitious Data Collection Meets The "Highly Offensive" Requirement ........ 21

VI. PLAINTIFF NEVER CONSENTED TO THE FORUM SELECTION CLAUSE IN THE TERMS OF SERVICE ........ 22

CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*420 Caregivers, LLC v. City of L.A.*,
219 Cal. App. 4th 1316 (2012) .......... 20

*Allen v. Quicken Loans, Inc.*,
2018 WL 5874088 (D. N.J. Nov. 9, 2018) .......... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1, 2

*Batts v. Gannett Co.*,
2023 WL 3143695 (E.D. Mich. Mar. 30, 2023) .......... 5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 7, 8

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) .......... 17

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) .......... 2

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal 2020) .......... 11, 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 22

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 4, 5, 11, 16

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 5

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 22

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 7

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 5

*Carpenter v. U.S.*,
585 U.S. 296 (2018) .......... 6

*Chabolla v. Class Pass Inc.*, 129 F.4th 1147 (9th Cir. 2025) .......... 7, 8

*Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) .......... 3

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 14, 15

*Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 13

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 14

*Ewing v. Flora*, 2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) .......... 17

*Feldman v. Star Trib. Media Co. LLC,* 659 F. Supp. 3d 1006 (D. Minn. 2023) .......... 4

*Flanagan v. Flanagan,* 27 Cal. 4th 766 (2002) .......... 16

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) .......... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... 2

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1929957 (N.D. Cal. July 14, 2025) .......... 22

*Gaige v. Exer Holding Company, LLC*, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 4

*Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 6

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) .......... 2

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 12

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 4

*Hammerling v. Google LLC*, 615 F.Supp.3d 1069 (N.D. Cal. 2022) .......... 21

*Helgund v. Atkin Cnty.*,
871 F.3d 572 (8th Cir. 2017) .......... 4

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 5

*I.C. v. Zynga, Inc.*,
600 F.Supp.3d 1034 (N.D. Cal. 2022) .......... 5

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 17, 19, 21

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 14

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 11, 17, 20

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016) .......... 4

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 3

*Katz-Lacabe v. Oracle America, Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) .......... 21

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 7, 8

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 5

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 13, 17

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 5

*Lin v. Crain Communications, Inc.*,
2020 WL 248445 (E.D. Mich. Jan. 16, 2020) .......... 5

*Long v. Provide Com., Inc.*,
200 Cal. Rptr. 3d 117 (2016) ..... 8, 9

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ..... 6, 7

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..... 18

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ..... 17

*Moreno v. San Francisco Bay Area Rapid Trans. Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ..... 21

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..... 8, 9, 21

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..... 7

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..... 21

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ..... 4

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. 2024) ..... 3, 5

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ..... 9

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..... 10

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal Oct. 23, 2019) ..... 11

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 22

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..... 2

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) ..... 3

*Salazar v. Nat'l Basketball Ass'n*,
685 F. Supp. 3d 232 (S.D.N.Y. 2023) ..... 5

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) .......... 3

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 6, 10

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 16

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 19

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 15

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .......... 8, 9

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 13, 14, 15

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) .......... 8, 23

*Strehl v. Guitar Center, Inc.*,
2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) .......... 9

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 4

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 6

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 19

*Valenzuela v. Nationwide Mutual Insurance Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 12

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 19

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .......... 4

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .......... 2

*Yoon v. Lululemon USA, Inc.*,
549 F.Supp.3d 1073 (C.D. Cal. 2021) ..... 5, 12

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ..... 11, 12

**STATUTES**

18 U.S.C. § 2511(2)(d) ..... 10

18 U.S.C. § 2710(b)(1) ..... 4

Cal. Civ. Code § 53.5 ..... 17

Cal. Fin. Code § 4052 ..... 3, 20

Cal. Ins. Code § 791 ..... passim

Cal. Pen. Code § 31 ..... 19

Cal Pen. Code § 631(a) ..... 13, 14, 15

Cal. Pen. Code § 632 ..... 16, 17, 18, 19

**RULES**

Fed. R. Civ. P. 8(a)(2) ..... 1

Fed. R. Civ. P. 12(b)(6) ..... 2

**REGULATIONS**

16 C.F.R. § 313.3 ..... 20

**INTRODUCTION**

Plaintiff Stacy Penning ("Plaintiff"), individually and as a class representative for all others similarly situated, seeks to represent a putative class of individuals who, like him, utilized Defendant InsuranceZebra, Inc. d/b/a The Zebra's ("Defendant") website, thezebra.com (the "Website") to search for and compare insurance quotes and had their protected communications disclosed to Meta Platforms, Inc. ("Facebook") and Google LLC ("Google") without their knowledge or consent. First Amended Complaint (ECF No. 17) ("FAC").

Defendant operates as an insurance broker, whereby it earns commissions for assisting consumers with obtaining insurance policies. FAC ¶ 38. Despite representations of privacy, Defendant intercepts and discloses information provided by consumers on their insurance applications to both Facebook and Google. As a financial institution, such practices also violate state and federal law, including California's Insurance Information and Privacy Protection Act ("IIPPA"), the Gramm-Leach-Bliley Act ("GLBA"), and the California Financial Information Privacy Act ("CalFIPA"). Such disclosures include the types of insurance products searched for by consumers, whether they are currently insured, and information related to their residence. *Id.* ¶¶ 107-08.

Defendant raises a host of arguments as to why Plaintiff's claims should be dismissed. *See* Defendant's Motion to Dismiss First Amended Complaint (ECF No. 26-1) ("MTD"). However, as discussed further below, all of Defendant's arguments fail. Accordingly, Defendant's motion should be denied in its entirety.

**LEGAL STANDARD**

"A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "If the challenge to jurisdiction is a facial attack...the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *2 (S.D. Cal. Oct. 9, 2015) (internal citation and quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendant argues that Plaintiff lacks standing to pursue his claims in federal court because "he does not allege that he disclosed any sensitive information to The Zebra, [and doesn't] identify any specific personal information he disclosed that implicates a protectable privacy interest." MTD at 9. That is wrong.

In order to establish Article III standing, a plaintiff must plead facts that plausibly demonstrate three things: (1) he has suffered a concrete, particularized, and actual (*i.e.*, not conjectural or hypothetical) injury; (2) the injury is traceable to the challenged action of the defendant; and (3) it is likely (*i.e.*, not merely speculative), that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000). The harm suffered by the plaintiff must be one traditionally recognized by

American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Ninth Circuit is in accord, acknowledging that the interception of web browsing information in violation of a privacy statute (including the CIPA) is sufficient for Article III standing. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 599 (9th Cir. 2020) (finding Article III standing where "Facebook uses plug-ins to track users' browsing histories when they visit third-party websites, and then compiles these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Salazar v. National Basketball Association*, 118 F.4th 533, 542 (2d Cir. 2024) (finding standing where plaintiff alleged his data "was disclosed as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel") (cleaned up); *Salazar v. Paramount Global*, 133 F.4th 642, 648 (6th Cir. 2025) (finding "Salazar's alleged injury—the disclosure of his 247Sports.com private video-viewing history to Facebook," sufficient to confer Article III standing). Because those privacy harms are "well-ensconced in the fabric of American law," intangible harms bearing a close relationship to them "qualify as concrete." *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155–159 (3d Cir. 2022) (internal quotations omitted).

Insurance brokers, like Defendant, are prohibited from disclosing information provided on applications for insurance products. *See* Cal. Ins. Code § 791.13; *see also* Cal. Fin. Code § 4052(b)(6). Consumers who have had their protected information disclosed without their consent have suffered a harm akin to intrusion upon seclusion. *See TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598

(9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Gaige v. Exer Holding Company, LLC*, 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted); *see also Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1016 (D. Minn. 2023) (noting the "evidently close relationship between Feldman's VPPA claim in this case and the intrusion-upon-seclusion tort as it has been traditionally understood"); *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("a concrete injury for Art. III standing purposes occurs when Google, or any other third party, tracks a person's Internet browser activity without authorization); *Helgund v. Atkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017) ("An individual's control of information concerning her person—the privacy interest [plaintiffs] claim here—was a cognizable interest at common law"); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) (ample precedent recognizes that an individual has an interest in preventing disclosure of their personal information). Several post-*TransUnion* decisions confirm this position. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022) ("In *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as concrete when that injury bears a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.") (internal quotations omitted); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (finding that "intrusions into privacy can constitute injury in fact"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) (same).

Courts from across the country have reached the same conclusion in similar contexts. For example, the Video Privacy Protection Act and Michigan's Preservation of Personal Privacy Act prohibit companies from disclosing information related to consumers' video viewing materials and subscriptions. *See* 18 U.S.C. § 2710(b)(1); Mich. Compl. Laws § 445.1712. Under both statutes, both before and after *TransUnion*, courts have uniformly held that unlawful disclosures constitute concrete injuries sufficient to confer Article III standing. *See*, *e.g.*, *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally

protected information."); *Batts v. Gannett Co.*, 2023 WL 3143695, at *3 (E.D. Mich. Mar. 30, 2023) ("[T]he Supreme Court's recent *TransUnion* case does not alter the settled matter of a PPPA violation satisfying Article III standing requirement for a concrete and particularized injury in fact."); *Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232 (S.D.N.Y. 2023) (collecting cases); *Lin v. Crain Communications, Inc.*, 2020 WL 248445, at *6 (E.D. Mich. Jan. 16, 2020) (collecting cases).

Here, Plaintiff does not allege an injury stemming from a bare statutory violation. Instead, he alleges that when he "used the Website to view or purchase insurance, Defendant intercepted his confidential communications." FAC ¶ 5. Such information included the fact that he was applying for insurance products, whether he was already insured, and information related to his residence. *Id.* ¶ 108. Such disclosures were made for the purposes of targeted advertising without Plaintiff's express consent. *Id.* ¶ 6. Plaintiff also details the types of information that were disclosed during his application process, including information related to his current residence and whether he is presently insured. *Id.* ¶ 108. Plaintiff suffered a concrete injury from these disclosures, as they were egregious violations of Plaintiff's privacy and Defendant's legal duties to protect such information from disclosure. Nothing more is required. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (finding a legally cognizable privacy injury where plaintiffs alleged "Facebook identifies and collects the contents of users' individual private messages."). This harm suffered by Plaintiff is one traditionally recognized by American courts. *See Brown*, 685 F.Supp.3d at 925; *Petris*, 736 F.Supp.3d at 270-71.

The authority relied upon by Defendant is inapposite, as those cases did not concern the unlawful disclosure of protected information. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (tester plaintiff who did not identify any sensitive or protected information disclosed by the defendant)[1]; *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *1 (N.D. Cal. May 13, 2025) (same); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1077 (C.D. Cal. 2021) (same); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024) (same); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1049-50 (N.D. Cal. 2022) (same); *Lightoller v.*

[1] Although Plaintiff is passionate about data privacy, he is not a "tester" and does not actively seek out privacy violations.

*Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same). Defendant's remaining argument about information voluntarily provided to Defendant fares no better. Indeed, information provided by a patient to a doctor does not grant their doctor the unfettered right to disclose the patient's protected information to anyone they choose for any purpose. *Carpenter v. U.S.* stands for the limited proposition that when an individual discloses information to others "the Government is typically free to obtain such information from the recipient without triggering Fourth Amendment protections." 585 U.S. 296, 308 (2018). The fact that Plaintiff shared his protected information with Defendant to receive quotes for insurance products does not allow Defendant to disclose such information to third parties for independent marketing purposes without Plaintiff's consent.

## II. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HIS PROTECTED COMMUNICATIONS

### A. Defendant Has Failed to Establish That Plaintiff Was On Notice Of Its Privacy Policy

Defendant contends that Plaintiff's claims fail because he was "put on notice of and consent[ed] to the Website's use of Facebook and Google remarketing tools." MTD at 10. However, such contentions directly contradict Plaintiff's express allegations. *See*, *e.g.*, FAC ¶¶ 2, 6, 10, 11, 38, 152, 167, 170. At the pleading stage, Plaintiff's allegations are sufficient. *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169 (N.D. Cal. 2024) (finding a lack of consent where plaintiffs alleged they "did not give their consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap their confidential communications with Chase") (cleaned up); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (same where the plaintiff alleged that "Capital One failed to provide notice that her calls would be recorded"). And as the Northern District of California has held, "the question of express consent is usually a question of fact, where a fact-finder needs to interpret the express terms of any agreements to determine whether these agreements adequately notify individuals regarding the interceptions." *Matera v. Google Inc.*, 2016 WL 5339806, at *17

(N.D. Cal. Sept. 23, 2016) (internal citations omitted). Regardless, "consent is an affirmative defense for which defendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024) (cleaned up); *see also Matera,* 2016 WL 5339806, at *17 ("as the party seeking the benefit of the exception, it is Google's burden to prove consent[.]") (citations omitted). Defendant has not met that burden here.

California law requires constructive notice for consumers to be bound by contractual terms. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("To form a contract under California...law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."). To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, an enforceable contract will only be found based on constructive notice, unless the website can show that a consumer has actual knowledge of the agreement. Defendant cannot prove either. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). For internet contracts, courts distinguish between "clickwrap" agreements and "browsewrap" agreements. Clickwrap agreements "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman*, 30 F.4th at 856. Conversely, browsewrap agreements "offer terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* "A sign-in wrap lives somewhere in the middle [between a 'browsewrap' agreement and a 'clickwrap' agreement]: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. Class Pass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (citing *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)). Courts consistently hold that browsewrap agreements are unenforceable because they fail to provide constructive notice to consumers. *Oberstein*, 60 F.4th at 513 ("Courts are generally reluctant to enforce [browsewrap] agreements because they often leave users unaware that contractual terms were even offered[.]"). As explained by the Ninth Circuit,

> [I]n keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on

> every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, ***even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice***. . . . [T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014).

Under California law, establishing an agreement to internet terms is "fact intensive" and is informed by the "totality of the circumstances." *Berman*, 30 F.4th at 856. "Notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it." *Id.* at 856 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (applying California law)). In *Chabolla*, the Ninth Circuit explained that when determining whether notice is reasonably conspicuous, courts should consider "the 'context of the transaction,' as well as the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design,' [to] inform whether a website provides reasonably conspicuous notice of the terms of an agreement." *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh*, 100 F.4th at 1014); *cf. Long v. Provide Com., Inc.*, 200 Cal. Rptr. 3d 117, 125–26 (2016) ("[T]he Terms of Use hyperlinks—their placement, color, size and other qualities relative to the . . . Web site's overall design—are simply too inconspicuous to meet that standard."). The webpage must take steps "to capture the user's attention and secure her assent," for the terms to be reasonably conspicuous. *Berman*, 30 F.4th at 857.

Defendant provides that "[u]sers who proceed to the home or car insurance comparison tools are told that when they click 'Save & continue' (as is necessary to progress through the tool and ultimately view the quotes), they agree to the Privacy Policy and Terms of Service." MTD at 11. However, as conceded by Defendant, there are several quote comparison tools available on its Website. MTD at 1-2. What Defendant fails to acknowledge is that its Terms of Service and Privacy Policy are not conspicuously presented to consumers for each quote comparison tool. *See* Fraietta Decl. Exs. 1-2. This distinction is crucial, as it is Defendant's burden to establish that Plaintiff agreed to its terms. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("[T]he party

alleging the existence of a contract [] has the burden to prove each element of a valid contract—including mutual assent.").

Here, no such notice or unambiguous assent exists for users, including Plaintiff. For users who use the car insurance tool or the car + home insurance tool, Defendant does not present its Terms of Service and Privacy Policy to consumers. Fraietta Decl., Exs. 1-2. In fact, and most relevant here, a user is not required to agree to these hyperlinks, and instead can easily click to "show quotes at this coverage" without even scrolling to the bottom. *Id*. Thus, there is no express consent required to proceed or before the wiretapping occurs. These are the exact types of agreements "courts have refused to enforce." *Nguyen*, 763 F.3d at 1177; *see also Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 866 (2016) (where scrolling was required on some webpages to find bring the hyperlinked terms into the screen, "review of the screenshots reveals how difficult it is to find the Terms of Use hyperlinks in the checkout flow *even when one is looking for them*") (emphasis in original); *Strehl v. Guitar Center, Inc.*, 2023 WL 9700041, at *6 (C.D. Cal. Nov. 3, 2023) ("If a purchaser clicks the first 'Complete Order' button, then Defendant's Purchase Terms hyperlink would constitute a browsewrap agreement. The hyperlink to the Purchase Terms would be located at the bottom of the screen, where it is reasonable likely that it would not be visible to the user unless the user scrolled down or zoomed out."); *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1359 (S.D. Cal. 2024) (refusing to enforce browsewrap agreement and noting "[c]ourts have declined to enforce browsewrap agreements where notice … is only visible to users if they have scrolled down to the next screen") (cleaned up); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.) ("[A] reference to the existence of … terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice.").

### B. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purposes

Defendant argues that Plaintiff's ECPA claim fails because the ECPA is a one-party consent statute and Defendant consented to the interceptions at issue. MTD at 11. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States

or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including the IIPPA, GLBA, and CalFIPA's prohibitions against disclosing information provided for financial services without authorization. FAC ¶¶ 22-24, 140-41. Other courts have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Shah*, 768 F.Supp.3d at 1053 (denying motion to dismiss ECPA claim where "Plaintiffs…allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts."). Defendant's reliance on *Allen v. Quicken Loans, Inc.* is misplaced, as there the plaintiff conceded that "he is not a consumer and the information that he alleges Defendants misused is not protected by the GLBA." 2018 WL 5874088 (D. N.J. Nov. 9, 2018). Here, Plaintiff is a consumer, as he utilized the financial services offered by Defendant, namely, Defendant's services as an insurance broker to provide quotes for insurance policies. FAC ¶¶ 3-4, 36. Moreover, as an insurance broker, Defendant is subject to the statutes relied upon by Plaintiff. Finally, Defendant's argument that its primary motivation for the disclosures at issue was for marketing purposes, rather than to violate the IIPPA, GLBA, or CalFIPA, has been consistently rejected. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims.") (collecting cases).

## III. PLAINTIFF STATES A CLAIM UNDER THE ECPA AND CIPA § 631

### A. Defendant Intercepted The "Contents" of Plaintiff's Communications

Defendant asserts that "none of the stored browser information or other identifiers supposedly collected by Facebook or Google constitute 'content.'" MTD at 13. That misstates Plaintiff's allegations.

Courts interpret "content" under both the CIPA and ECPA as "the intended message conveyed by the communication . . . not includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (internal citations omitted); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts conduct a "case-specific" analysis to distinguish "content" from record information; this analysis focuses on "how much information would be revealed by the information's tracking and disclosure." *Yoon*, 2024 WL 5264041, at *5. Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *see also id.*, 2024 WL 5264041, at *6 ("[T]he button click data associated with . . . titles are contents."). "Content" also includes "search queries" and "the particular document" requested. *See Brown*, 685 F. Supp. 3d 909; *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal Oct. 23, 2019) ("Revitch requested information . . . by clicking on items of interest; Moosejaw responded . . . . This series of requests and responses . . . is communication."). Full-length URLs that contain search terms may also constitute as the "contents" of a communication. *E.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) ("[D]ivulging a URL containing that search term . . . could amount to disclosure of the contents of a communication."); *Yoon*, 2024 WL 5264041, at *5 (same); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("The parties agree . . . [the] URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.").

Here, Plaintiff has demonstrated that Website users' PII and related communications while submitting an application for quotes on insurance products are intercepted via the Facebook Tracking Pixel and Google Analytics. Through these tracking technologies, both Facebook and Google

receive full-length URLs containing terms that allow them to learn which pages Plaintiff viewed as well as the responses Plaintiff entered while completing the applications. FAC ¶¶ 79–81, 106–09. Whether Plaintiff's activity is classified as "buttons clicked" or "search terms" is not of great importance; what matters is "how much information" was revealed by Defendant's disclosure to Facebook and Google. *Yoon*, 2024 WL 5264041, at *5. With the disclosed information here, third parties clearly see both Plaintiff's identity and information disclosed through his applications on Defendant's Website. FAC ¶¶ 10–11. Therefore, the intercepted material is "content" rather than record information.

The arguments raised by Defendant are without merit. First, Defendant argues that Plaintiff's communications cannot be "content" because they are automatically generated, rather than user-generated. MTD at 13. That is wrong, as content related to Plaintiff's residence and whether he is currently insured result from his submissions on Defendant's Website. Defendant even concedes that "users are prompted to enter various pieces of user-generated content" on the Website. MTD at 14. Therefore, the communications intercepted are not "automatically generated" record information. Moreover, the cases relied upon for Defendant's proposition concern the use of session replay technology, not the Facebook Pixel or Google Analytics. *See Yoon*, 549 F. Supp. 3d at 1077 ("[Defendant] uses Quantum Metric software called "Session Replay" to capture a customer's interaction with [its] webpage."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 827 (N.D. Cal. 2021) (same). Session replay technology operates in an entirely different manner than the tracking technologies at issue here. Similarly, Defendant's reliance on *In re Zynga* misses the mark. MTD at 13. Plaintiff does not allege harm because an "identifier . . . such as a Facebook ID" was stored on his browser. *Id.* Rather, Plaintiff alleges that he suffered harm when his user-generated communications were intercepted and disclosed to third parties "in conjunction with" his PII. FAC ¶ 5.

Defendant briefly argues that dismissal is appropriate because Plaintiff merely alleges what identifiers Facebook and Google are capable of capturing, as opposed to stating what was captured. MTD at 13–14. This overstates Plaintiff's burden at the pleading stage. *See Valenzuela v. Nationwide Mutual Insurance Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) ("It is not clear from

the allegations in the FAC what 'data' Akamai 'harvests' . . . [b]ut . . . a plausible inference is that Akamai . . . does not simply harvest record information."). Moreover, Plaintiff has provided a robust account of what information is intercepted. *See* FAC ¶¶ 79–81, 85–86, 106–09. In fact, the only way to navigate through the Website is to "first share what type of insurance [you] are looking for then share any additional relevant information." *Id.* ¶ 37.

Next, Defendant argues that The Zebra "sanitizes Website URLs of any user content." MTD at 14. Defendant goes on to argue that because the intercepted communications do not contain sensitive PHI, they are less likely to constitute "content" than instances where "deeply personal search queries" were disclosed to third parties. MTD at 15. That is wrong, as the authority relied upon by Defendant for this claimed distinction plainly states that when URLs "reproduce a person's personal search engine queries, they are contents." *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023). Here, Defendant discloses URLs with user-generated search queries or button clicks, which are contents. FAC ¶¶ 79–81, 106–09.

Finally, Defendant likens this matter to *King v. Hard Rock Café Int'l (USA), Inc.*, where the court dismissed a CIPA wiretapping claim after determining the interception of PII and hotel booking information merely constituted record information. 2025 WL 1635419, at *4–5 (E.D. Cal. June 9, 2025). In *King*, it was reaffirmed that information such as "an address, telephone number, email address, or zip code," without more, is record information. *Id.* at 4. Such authority is irrelevant to the extent it makes no mention regarding the disclosure of insurance inquiries, which is entirely separate from "an address, telephone number, email address, or zip code." *Id.*

**B. Defendant Knowingly Assisted Facebook and Google In Violating CIPA**

Defendant claims that Plaintiff has failed to show that The Zebra intended to assist Facebook and Google in violating § 631(a) of the CIPA. Not so.

The fourth prong of § 631(a) of the CIPA imposes liability on anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things" stated elsewhere in the subsection. Cal Penal Code § 631(a). Nowhere in the statute's language is there "an intent standard." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024). As such, "courts have taken . . . different approach[es]."

Compare *id*. at *8 (Declining to read a common law "aiding and abetting" scienter requirement into the "aids, agrees with, employs, or conspires with" language of § 631(a)), and *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) (same), with *Esparza v. UAG Escondido A1 Inc*., 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (Reading in the "knowledge" and "substantial assistance" elements of common law aiding and abetting into § 631(a)).

While the fourth prong of CIPA may require some level of knowledge and intent, under the Wiretap Act, "intent" may be demonstrated where an interception is "purposeful" and "deliberate," and not "a result of accident or mistake." *In re Google Assistant Priv. Litig*., 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) (internal citations omitted). Further, "interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *Id.* The knowledge and intent requirement under § 631(a) should mirror the federal standard. *See Brodsky*, 445 F. Supp. 3d at 127.

Here, Plaintiff clearly shows that Defendant "chose to integrate" the Facebook Pixel and Google's tracking services onto the Website. FAC ¶¶ 49, 58. The benefits reaped by Defendant are clear. Defendant allows third parties to intercept the PII and content of Website users' communications for marketing, advertising, and analytics purposes. *Id.* ¶¶ 42, 96, 104, 111. Even if Defendant's argument that it "never intended" for such disclosure is to be believed, it does not excuse them from liability. MTD at 17. Defendant was aware of Facebook and Google's interceptions because Defendant was responsible for the "integration and configuration" of the respective tracking pixels. *Id.* By failing to take remedial action, Defendant intentionally aided Facebook and Google in violating § 631(a). *See In re Google*, 457 F. Supp. 3d at 815. Further, Defendant should have known about the heightened privacy protections afforded by the IIPPA, GLBA, and CalFIPA when dealing with the disclosure of personal information "in connection with an insurance transaction." FAC ¶ 23. Regardless of what Defendant claims, The Zebra acts as a broker to facilitate the sale of insurance products to consumers. According to Defendant's Website, The Zebra derives revenue via commissions from selling insurance policies. FAC ¶ 38. This plainly indicates that Defendant's illicit actions were not "a result of accident or mistake," but rather an intentional endeavor to gain a commercial advantage. *See In re Google*, 457 F. Supp. 3d at 815.

In its argument, Defendant falsely assumes there is a common law scienter requirement in the fourth prong of § 631(a). In addition to citing *Esparza*, Defendant chastises Plaintiff's failure to allege The Zebra provided "substantial assistance" to Facebook and Google. MTD at 16–17. This should not be the required pleading standard. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) ("The statute does not necessarily incorporate the common law requirement for aiding and abetting."); *St. Aubin*, 2024 WL 4369675, at *8 ("The Court finds th[is] approach . . . more persuasive because it more closely follows the language of the statute."); *Cousin*, 681 F. Supp. 3d at 1130 (same).

Defendant also relies on *Smith*, where the Court held that a defendant's use of a payment processor for fraud prevention, by itself, failed to demonstrate defendant's knowledge "that . . . services were based on . . . allegedly illegal interception." 754 F. Supp. 3d at 943. Put differently, the Court found that § 631(a) did not impose liability on defendants who "properly and lawfully provide[] information . . . to third part[ies] without any knowledge or intent that . . . violates the statute." *Id.* at 942. Here, the facts are dissimilar to those in Smith. In that case, Yeti was accused of being derivatively liable for assisting Adyen, a payment processor that offers fraud prevention service. *Id.* at 943. It was not facially indicative in Smith that the exchange of customer PII and communications with Adyen would facilitate an illegal purpose; businesses engaged in electronic commerce commonly rely on such services. *See id.* at 942–43. Here, Defendant is in the business of selling insurance policies. As previously explained, this form of business has heightened privacy protections and government regulations. See FAC ¶¶ 22–36. Defendant cannot plead ignorance that the disclosures were a mistake. Defendant knowingly intended to assist Facebook and Google in behavior that violated § 631(a). Therefore, Defendant is derivatively liable.

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 632

### A. Plaintiff Has Alleged That His Communications With Defendant Were "Confidential"

Zebra argues that "Plaintiff's allegations do not establish that the communications at issue are 'confidential.'" MTD at 18. Not so.

CIPA § 632 protects against "'intentional, nonconsensual recording' of communications 'regardless of the content of the conversation' involved or how parties choose to disseminate it thereafter." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (quoting *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776 (2002). "Rather, the inquiry is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Id.* (citing Cal. Pen. Code § 632(c)). Plaintiff clearly alleges that he intended the communications be confined to himself and Defendant. *See, e.g.*, FAC ¶¶ 5, 6, 11, 25, 24-26, 157, 164.

Defendant's "argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination." *Brown*, 685 F. Supp. 3d at 937; *see also Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) ("The scattering of state and federal cases (none from the California Supreme Court) considering various communications on a case-by-case basis do not establish that California law presumes the non-confidentiality of all online communication.").

Next, Defendant argues that "[i]f Plaintiff's communications were confined to only The Zebra, the Website ... would not be able to function." MTD at 19. This is a red herring. Plaintiff takes issue with his confidential insurance communications being shared with additional parties who are not "insurance carriers and other insurance professionals"— Facebook and Google—who play no role in the "gather[ing] and compar[ing of] insurance quotes." MTD at 19; *See also*, FAC ¶¶ 96, 104 (alleging Facebook's function is to "spy on users" and "target [] users with advertisements," as opposed to facilitating Zebra's service of sharing of information with insurance companies and professionals for the purpose of generating quotes). Thus, Plaintiff alleges that he "expected [his insurance] information would remain confidential—an expectation [he] argue[s] was objectively reasonable because sharing [insurance] information without consent is a crime." *Smith*, 735 F. Supp. 3d at 1200 (N.D. Cal. 2024).

**B. Plaintiff's Communications With Defendant Are Legally Protected**

Citing no case law, Zebra next argues that "Plaintiff's alleged use of the Website" does not constitute an "'insurance transaction' within the meaning of [Cal. Ins. Code § 791.]" MTD at 20. That is wrong. As an insurance broker, Defendant is in the business of selling insurance policies

FAC ¶ 36. Users "share … personal information" with Zebra who then "works with over a hundred insurance companies to offer insurance policies … and [] has a team of over a hundred licensed agents to help users select the right policy," FAC ¶ 36, which users "can choose and purchase." *Id.* ¶ 37. This is "determination of an individual's eligibility for an insurance coverage[.]" Cal. Ins. Code § 791(m)(1).

Regardless, as the court in *Mitchell v. Sonesta Int'l Hotels Corp*., 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024) put it:

> Plaintiff ... has certainly alleged that she had a reasonable basis to believe that her communications were "confidential" (irrespective of whether or not they fall within the definition of "guest records" under California Civil Code § 53.5).

Here, as in *Mitchell*, Plaintiff has alleged that she intended the communications be confined to her and Defendant, irrespective of whether they "fall within" the definition of an "insurance transaction" under Cal. Ins. Code. § 791. *See, e.g*., FAC ¶¶ 5, 6, 11, 25, 24-26, 157, 164. And courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g., In re Meta Pixel*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Bernstein v. United Collection Bureau, Inc*., 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015).

Defendant's reliance on *King v. Hard Rock Cafe Int'l (USA), Inc*., 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) is misguided. Unlike the *King* plaintiff who could have "alleg[ed] additional facts" and was granted leave to amend, Plaintiff here has alleged more than "bare allegations" as to his use of the website. *See, e.g*., FAC ¶¶ 3-11. "At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 601 (9th Cir. 2020); compare also *id.* at 603-06 ("Plaintiffs allege that Facebook obtained a comprehensive browsing history of an individual .... Facebook argues that Plaintiffs need to identify specific, sensitive information that Facebook collected .... Plaintiffs allege that a Google search could generate links that include full-string, detailed URLs that Facebook then collected. ... Plaintiffs have sufficiently pleaded a reasonable expectation of privacy to survive a Rule 12(b)(6) motion to dismiss."), with, *e.g*., FAC ¶ 80 ("In the

URL of the request, red squares highlight that the individual user... viewed a page on www.thezebra.com ... to compare care insurance quotes".).

**C. Defendant Cannot Disclose Legally Protected Information Without Consent**

Next, Defendant argues that "the IIPPA permits covered entities to disclose personal information ... 'in connection with the marketing of a product or service,' so long as sensitive or privileged information is not disclosed[.]" MTD at 21. First, this is a red herring as Plaintiff brings her claim under CIPA, which requires Defendant obtain prior consent (see supra Argument § []) and which makes no marketing exemption. Second, Defendant violated the IIPPA because it has disclosed at the very least Plaintiff's "mode of living," "general reputation," or a "classification derived from the information[.]" Cal. Ins. Code § 791.13(k)(1). See, e.g., FAC ¶¶ 106, 108 (disclosing that the website user is a homeowner, and is a driver who is currently insured). Third, and more importantly, the IIPPA does not preempt CIPA. *See, e.g., Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (rejecting the defendant's argument that the CCPA, not CIPA, 'should control' because it was 'enacted after CIPA's ... provisions ... and specifically regulates the data collection at issue[,]' and finding the two statutes "complementary"). Here, the IIPPA is complementary with CIPA as it requires disclosure requirements above CIPA:

> An insurance institution or agent shall clearly specify those questions designed to obtain information solely for marketing or research purposes from an individual in connection with an insurance transaction[.]

Cal. Ins. Code § 791.05 (emphasis added).

Defendant, by sharing information surreptitiously via invisible tracking technologies for marketing—violated this provision of the IIPPA as well. *See, e.g.,* FAC ¶¶ 48, 55.

**D. Defendant Recorded Plaintiff's Communications Without Consent**

Defendant argues that "Plaintiff has not stated any basis for The Zebra's liability," and "[w]hile CIPA § 631(a) includes a liability prong for 'aiding' a violation by another party, no similar provision exists in Section 632." MTD at 21, 21 n.17. Not so.

As noted *supra*, Argument § II. A., Section 631(a) explicitly provides for derivative liability where a defendant either "aids" or "agrees with," or "employs" or "conspires with" third parties. But

Section 632 still implicitly also allows for derivative liability. "All persons concerned in the commission of a crime … or aid and abet in its commission … are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31." *Smith v. Rack Room Shoes, Inc*., 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025).

As a result, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); accord *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) ("[I]t is not necessary for Altais or BTPSO to directly call or record the phone calls with [p]laintiff to be liable[.]"). "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Vera*, 791 F. Supp. 2d at 965.

For these same reasons, it is not true that Plaintiff's "Section 632 claim must therefore be dismissed for lack of statutory standing[.]" MTD at 21 n.18.

## V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CA CONSTITUTION

To state a claim for invasion of privacy under the California Constitution, Plaintiffs must plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted). Defendant argues that Plaintiff has failed to establish each of these three elements. That is wrong.

### A. Plaintiff Has A Legally Protected Privacy Interest In His Personal Information

Defendant argues that "Plaintiff has no legally protected privacy interest in the information alleged to have been transmitted to Facebook and Google." MTD at 22. Not so.

Plaintiff has made numerous allegations of the specific personal data at issue. *See, e.g*., FAC ¶ 79 (example showing interception of data when individuals view a page on Zebra.com and apply for home insurance); *Id*. ¶ 80 (example showing interception of data when individuals view a page on Zebra.com and compare car insurance quotes); *Id*. ¶81 (alleging defendant discloses precisely who the individual user that used The Zebra Service on the Website); *Id*. ¶ 108 (alleging Defendant

also discloses other nonpublic information from a consumer's application, including whether they are currently insured and information related to their residence). Plaintiff has a cognizable privacy interest in this data because, in the aggregate, it reveals highly personal information about Plaintiff including, *inter alia*, (1) who Plaintiff is, (2) the fact that Plaintiff is seeking insurance, (3) whether or not Plaintiff is insured, and (4) what type of insurance Plaintiff is seeking. This information is more revealing than that collected in *420 Caregivers, LLC v. City of L.A.*, 219 Cal. App. 4th 1316 (2012) and *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) – cited by Defendant – where the information did not expose anything about the Plaintiffs' intentions as consumers, unlike here.

**B. Plaintiff Has A Reasonable Expectation In His Insurance Decisions**

Defendant states, "[u]sers intend for their information to be shared by using the Website," and therefore there can be no expectation of privacy. MTD at 23. Defendant glosses over the fact that while users may intend to communicate with the Website, they do not intend – nor do they consent – that their communications be surreptitiously intercepted by Third Parties, enabled by Defendant's implementation of tracking pixels. This is especially true when it comes to an individual's insurance decisions, which are highly sensitive.

Plaintiff's expectation of privacy in his insurance decisions is formed, in part, by the fact that such information is specifically protected by law. *See* Cal. Ins. Code § 791.13 (prohibiting the unauthorized disclosure of "any personal or privileged information about an individual collected or received in connection with an insurance transaction"); *see also* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential, including information collected through internet cookies); Cal. Fin. Code § 4052 *et seq.* (protecting from disclosure nonpublic personal information to nonaffiliated third parties without explicit prior consent of the consumer). This statutory framework at the state and federal level therefore provides a reasonable basis for expectation of privacy in insurance decisions. *See In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 800 (finding that the "plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information").

Moreover, it is the overall accumulation of information from Plaintiff in the aggregate that violates Plaintiff's reasonable expectation of privacy. *See Facebook Tracking,* 956 F.3d at 603 (the "use of cookies to track and compile internet browsing histories," enable "access to a category of information otherwise unknowable and implicate privacy concerns."); *see also Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022) (finding a reasonable expectation of privacy where Google collected a "large amount of personal information from users' smartphones"). Here, Defendant gathers a variety of information from Plaintiff and allows Third Parties to intercept this information to compile into profiles of Plaintiff. *See, e.g*., FAC ¶¶ 82, 104. In *Katz-Lacabe v. Oracle America, Inc*., the court found that the accumulation of information into profiles violated the reasonable expectation of privacy. 668 F.Supp.3d 928 (N.D. Cal. 2023) ("Plaintiffs' strongest argument lies in its allegation that Oracle's accumulation of a 'vast repository of personal data,' … contravenes the reasonable expectation of privacy.").

Defendant also argues that the Website's disclosures preclude an expectation of privacy. MTD 23–24. However, Defendant cannot, without contradicting Ninth Circuit precedent, claim that Plaintiff's reasonable expectation of privacy was negated by a privacy policy of which he had no reason to know existed. *See Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1178-79 (9th Cir. 2014) ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on – without more – is insufficient to give rise to constructive notice."); *Moreno v. San Francisco Bay Area Rapid Trans. Dist*., 2017 WL 6387764, at *3 (N.D. Cal. Dec. 14, 2017) (following *Nguyen* and rejecting consent argument based on defendant's privacy policy); *Opperman v. Path, Inc*., 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016) (same).

**C. Surreptitious Data Collection Meets The "Highly Offensive" Requirement**

Defendant contends that the collection of Plaintiff's information was not highly offensive. MTD at 24. This argument misses the mark.

First, "determinations of the egregiousness of the privacy intrusion are not usually resolved at the pleading stage." *Katz-Lacabe*, 668 F. Supp. 3d at 942; *see also In re Facebook Internet*

*Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1929957, at *10 (N.D. Cal. July 14, 2025) ("[I]t is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is.").

Second, Defendant ignores a host of recent cases that have held that surreptitious data collection meets the "highly offensive" requirement. *See, e.g., Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (holding the interception of browsing data was highly offensive given that Google "set an expectation that it would not save plaintiffs' activity on apps") (internal quotations omitted); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1079–80 (N.D. Cal. 2021) (finding the data collections to be highly offensive because Google's "representations regarding private browsing mode could have led users to assume that Google would not view their activity when in private browsing mode"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021) (finding Google's actions highly offensive because Google's "representations regarding Chrome's sync function could have led users to assume that Google would not receive the personal information at issue … while unsynced"). A reasonable person would undoubtedly find it offensive for someone to spy on their Internet browsing – an activity typically carried out privately, at home and behind closed doors, on password-protected computers or mobile devices that are shielded from public view. And here, Defendant has gone further, allowing Third Parties to intercept communications with the website regarding their sensitive, and legally protected, insurance decisions. Defendant did this surreptitiously, as consumers expect this information will be kept private. Given that the level of covertness is a crucial factor in determining whether the data collection is highly offensive, this requirement is met.

## VI. PLAINTIFF NEVER CONSENTED TO THE FORUM SELECTION CLAUSE IN THE TERMS OF SERVICE

Defendant claims that if Plaintiff used one of the tools on Defendant's Website, that "it necessarily follows that he agreed to the Website Terms of Service, and its forum selection clause." MTD at 25. That is wrong for the same reasons discussed, *supra* Argument § II. A. In order to

invoke its forum selection clause, Defendant must first establish that Plaintiff agreed to be bound by those terms. *See Stover,* 978 F.3d at 1086. Defendant has not met its burden, as Defendant has not established that Plaintiff was ever provided notice of its Terms of Service. *See* FAC ¶ 144; Fraietta Decl., Exs. 1-2. Accordingly, Defendant's request to transfer venue should be denied.

**CONCLUSION**

For these reasons, the Court should deny Defendant's Motion in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: August 29, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354765)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

*Attorney for Plaintiff*