Christopher W. James (SBN 289047)
Meghan Natenson (SBN 312634)
Lillian Sun (SBN 334071)
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, California 94105
Telephone: 415.979.6900
Facsimile: 415.651.8786
cjames@velaw.com
mnatenson@velaw.com
lsun@velaw.com

*Attorneys for Defendant*
INSURANCEZEBRA, INC., d/b/a THE ZEBRA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STACY PENNING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INSURANCEZEBRA, INC., d/b/a THE ZEBRA,<br><br>Defendant. | Case No.: 3:25-cv-03531-WHO<br><br>**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A)**<br><br>Hearing Date: October 8, 2025<br>Time: 2:00 pm<br>Courtroom: 2 – 17th Floor<br>Judge: Hon. William H. Orrick<br><br>Trial Date: None Set |

# TABLE OF CONTENTS


**I. Plaintiff's pleading deficiencies preclude Article III standing.** ........ 2

**II. Plaintiff's consent to the Website Privacy Policy and Terms bars his claims, and requires transfer to the Western District of Texas.** ........ 4

**III. ECPA's crime-tort exception does not apply.** ........ 8

**IV. Plaintiff has not alleged interception of "content" for a wiretapping claim.** ........ 10

**V. The Zebra did not knowingly assist third parties in violating CIPA § 631(a).** ........ 11

**VI. Plaintiff has not alleged a "confidential communication" under CIPA § 632.** ........ 12

**VII. Plaintiff does not allege derivative liability under CIPA § 632.** ........ 13

**VIII. The Opposition misses the mark on each element of invasion of privacy.** ........ 13

A. No legally protected privacy interest in the limited information at issue. ........ 13

B. No reasonable expectation of privacy in the information. ........ 14

C. No "surreptitious data collection" to satisfy the "highly offensive" element. ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Quicken Loans Inc.*,
No. 17-cv-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) .......... 9

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 948 (9th Cir. 2022).......... 6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 11

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 10

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-2865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 8

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 4

*Gaige v. Exer Holding Co., LLC*,
No. 24-cv-6099, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025).......... 4

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 5

*Hammerling v. Google LLC*,
615 F. Supp 3d 1069 (N.D. Cal. 2022) .......... 14, 15

*Heiting v. FKA Distrib. Co.*,
No. 24-cv-7314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 2

*Herrera v. Zumiez, Inc.*,
953 F.3d 1063 (9th Cir. 2020).......... 12

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 35 (1994) .......... 14

*Hughes v. Vivint, Inc.*,
No. 24-cv-3081, 2024 WL 5179916 (C.D. Cal. July 12, 2024).......... 2

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......... 3, 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019).......... 4

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 8

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023).......... 3, 4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 14

*Khamooshi v. Politico LLC*,
No. 24-cv-7836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 2

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 24-cv-1119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d. 1047 (N.D. Cal. 2025) .......... 5, 8

*Lightoller v. Jetblue Airways Corp.*,
No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023).......... 2

*Minor v. Fedex Office & Print Servs., Inc.*,
182 F. Supp. 3d 966 (N.D. Cal. 2016) .......... 3

*Mitchener v. CuriosityStream, Inc.*,
No. 25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 2

*Mitchener v. Talkspace Network LLC*,
No. 24-cv-7067, 2025 WL 1822801 (C.D. Cal. June 27, 2025) .......... 2

*Murphy v. Kenneth Cole Prods., Inc.*,
40 Cal. 4th 1094, (2007) .......... 12

*Oberstein v. Live Nation Entm't, Inc.*,
60 F.4th 505 (9th Cir. 2023).......... 6, 7

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025).......... 2, 3, 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024).......... 8

*Silver v. Stripe Inc.*,
No. 20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021).......... 5

*Smith v. YETI Coolers LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 11

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.).......... 5

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999).......... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......... 2, 3, 4

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021).......... 2

*Zbitnoff v. Nationstar Mortg., LLC*,
No. 13-cv-5221-WHA, 2014 WL 1101161 (N.D. Cal. Mar. 18, 2014).......... 14

**Statutes**

15 U.S.C. § 6802(a) .......... 9

15 U.S.C. § 6809(9) .......... 9

Cal. Fin. Code § 4052(a)-(b), (f) .......... 9

Cal. Pen. Code § 631(a) .......... 11, 12

Cal. Pen. Code § 632(a) .......... 12

Cal. Pen. Code § 632(c) .......... 12

Plaintiff Penning alleges that he visited The Zebra's Website in January 2025 to search for, obtain, and compare insurance quotes. FAC ¶ 4. This one sentence describes the full extent of all alleged facts regarding Penning's individual interactions with The Zebra.

The FAC's claims are instead premised on counsel's post-hoc investigative mining of the Website's various quote comparison tools, dependent on (i) the particular type of insurance sought (*e.g.*, home, auto, etc.), (ii) the specific tool used, (iii) the specific questions answered, (iv) the specific order in which they are answered, and (v) the specific responses to those questions. The FAC fails to allege any of those facts with respect to Penning's use of the Website. The Opposition attempts to substitute counsel's manipulation of the Website features as Penning's individual experience—an effort the Court must reject. The FAC should be dismissed for lack of standing and for failure to state a claim for any of the asserted causes of action, each of which is again dependent on a highly particularized use of Website tools that Penning never alleges.

The Opposition also fails to rebut that (assuming Penning did in fact use the tools in question) Penning consented to the data sharing alleged, and agreed to litigate this type of claim in a different forum. Among the few facts that *are* alleged about Penning's Website use is the timeframe: January 2025. FAC ¶ 4. The Zebra provided screenshots of the Website's relevant tool funnels from that precise timeframe, authenticated by Senior Vice President of Corporate Operations, Haley Ackerman. But rather than assessing the Website's appearance at the alleged relevant time, the Opposition relies on screenshots dated *August* 2025 (several months later) to assert that the Website's Terms of Service ("Terms") and Privacy Policy are not binding on Penning. The Opposition's misaligned approach is likely due to the reality that the relevant January screenshots satisfy each element the Opposition insists upon to enforce the Privacy Policy and Terms. Critically, Penning does not dispute that the Privacy Policy's disclosures are sufficient to put users on notice of the data sharing that occurs for purposes of consent; nor that consent is a complete defense to each claim. Penning also does not dispute that the forum selection clause in the Terms is effective. If Penning did not use the tools, he has no claim. If he did use the relevant tools, he was on notice of the Privacy Policy and agreed to the Terms. The *only* possible outcomes, therefore, are that the FAC must be dismissed or transferred. The FAC's other substantive deficiencies—also addressed in this Reply—further support dismissal.

**I. Plaintiff's pleading deficiencies preclude Article III standing.**

The FAC is devoid of factual allegations sufficient to show that Penning himself suffered a concrete injury. *See* Mot. (Dkt. 26-1) at 8-9. The Opposition ignores this, instead focusing on whether any privacy harm could *theoretically* exist as to a hypothetical Website user. While The Zebra disputes that the minimal information theoretically at issue could confer standing (*see id.* at 10), any theoretical harm to some unknown Website user is irrelevant to this Court's analysis of whether Penning has standing. Again, the FAC does not allege how Penning used the Website, what tools (if any) he used, what personal information he entered into such tools, or what personal information about him was intercepted. As demonstrated in the Motion, courts consistently dismiss similar complaints lacking particularized allegations about a plaintiff's own experience. *Id.* at 9 n.6 (collecting cases).[1] The Opposition does not overcome these authorities. It mischaracterizes some—falsely claiming that many were dismissed because they involved "tester" plaintiffs (Opp. at 5-6)[2]—but mainly misses the point: a plaintiff must identify the "specific personal information [they] disclosed that implicates a protectable privacy interest." *Khamooshi*, 2025 WL 1408896, at *2 (citations omitted). As the Ninth Circuit recently reiterated, courts "look to the *specific* underlying harm *experienced by the plaintiff*[.]" *Popa v. Microsoft Corp.*, -- F.4th --, 2025 WL 2448824, at *4 (9th Cir. Aug. 26, 2025) (emphasis added). And "*TransUnion* requires a court to assess whether *an individual plaintiff has suffered* a harm that has traditionally been actionable[.]" *Id.* (emphasis added) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).

---

[1] *See also Mitchener v. CuriosityStream, Inc.*, No. 25-cv-1471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing CIPA claim where, "though [p]laintiff alleges that [d]efendants *could* gain 'additional information about [a] visitor . . . ,' and that allegation *could* intrude on [p]laintiff's right to privacy, he fails to convert that hypothetical into concrete harm to *him*") (original emphasis); *Heiting v. FKA Distrib. Co.*, No. 24-cv-7314, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (website visitor "fail[ed] to allege any basic facts from which the Court could infer a concrete injury, like when and how many times she visited the site, what information she provided, [or] what information Defendant captured"); *Mitchener v. Talkspace Network LLC*, No. 24-cv-7067, 2025 WL 1822801, at *7-8 (C.D. Cal. June 27, 2025) (no standing where "[t]he only specific, relevant allegation in the FAC is that [p]laintiff visited [d]efendant's website after the TikTok software was installed").

[2] None of the following cases Plaintiff rebuts on that ground actually involved a "tester" plaintiff: *Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025), *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021), *Hughes v. Vivint*, No. 24-cv-3081, 2024 WL 5179916 (C.D. Cal. July 12, 2024), *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022), and *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023).

The Opposition insists that Penning "details the types of information that were disclosed during his application process, including information related to his current residence and whether he is presently insured." Opp. at 5 (citing FAC ¶ 108). That is false; the cited allegation is not specific to Penning. Instead, the FAC's allegations regarding purported "form_start" event captures, for example, are entirely premised on counsel's post-hoc investigation (FAC ¶ 108), untethered to Plaintiff's own use of the site. The allegations are attributed to "Plaintiff's counsel's investigation" (FAC ¶ 57),[3] offered from the perspective of "a user" (FAC ¶108), not Penning. This deficiency is compounded because the information purportedly captured is fully dependent on what Website tool is used, what questions are answered, and the order in which a user answers those questions. Mot. at 16. The FAC contains no allegations that Penning himself entered any information into either Website tool (or even used the specific tools at issue), much less responded to the same questions in the same order and in the same manner as his counsel. Penning alleges only that he generally used the Website "to search for, obtain, and compare price quotes." FAC ¶ 4. Plaintiff cannot now raise new allegations in the Opposition to make up for the FAC's deficiencies. *See Minor v. Fedex Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016).

Next, the Opposition argues that alleging a CIPA violation is generally sufficient for Article III standing. Plaintiff cites to *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) for the notion that "violations of privacy rights have long been actionable at common law." Opp. at 3-4. But the Ninth Circuit recently clarified: "[While] *In re Facebook* might have arguably offered at the time some support for the position that [a statutory violation is a concrete injury], that analysis finds no support in *TransUnion* . . . Despite the broad statements made therein, [*In re Facebook*] still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Popa*, 2025 WL 2448824, at *7-8. Similarly, Plaintiff cites to *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023), for the proposition that statutes codifying common law privacy rights give rise to concrete injury for Article III standing. Opp. at 3. Again, the Ninth Circuit *explicitly declined* to interpret *Jones* to establish a

[3] The Opposition also does not dispute that counsel's findings were the result of unnatural manipulations of the site tools, including answering questions out of order and selecting options that were unsupported and would result in the user being directed away from the tool. *See* Mot. at 16 n. 9.

categorical rule. *Popa*, 2025 WL 2448824, at *6 ("[D]espite its generalization about privacy statutes, *Jones* still implicitly evaluated, as *TransUnion* mandates, whether the specific plaintiffs had suffered a concrete injury"). *Popa* leaves no room for doubt: Penning must allege specific circumstances leading to *his own* injury, to establish standing. He has not done so.[4]

Plaintiff's other cited cases are distinguishable. Cases that analyzed harms under the federal Video Privacy Protection Act or Michigan's Preservation of Personal Privacy Act (*see* Opp. at 4-5) have no bearing here. And Plaintiff misinterprets his cited wiretapping cases. For example, Plaintiff cites to *Gaige v. Exer Holding Co., LLC*, No. 24-cv-6099, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) to argue that "general factual allegations of injury" are sufficient. But in *Gaige*, the Court merely found that the plaintiff did not have to allege the "specific dates of his injuries" to establish Article III standing. 2025 WL 559719, at *2. Similarly, Plaintiff's reliance on *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019) is misplaced. That case involved broad tracking of a person's entire Internet browser activity (a degree of privacy expectation not at issue here), as well as allegations that Google's collections were in violation of their own promises not to do so. Penning alleges no such violation of an express promise by The Zebra; to the contrary, he does not dispute that the Privacy Policy discloses precisely the conduct alleged.

The lack of specific allegations as to Penning's use of the Website, and the personal information he may have disclosed, is fatal to standing.

**II. Plaintiff's consent to the Website Privacy Policy and Terms bars his claims, and requires transfer to the Western District of Texas.**

Plaintiff does not dispute that consent to the alleged conduct is a complete defense to each of his claims. *See* Mot. at 10. Nor does he dispute that disclosures in the Website Privacy Policy provide sufficient notice of the tracking tools alleged in the FAC to establish consent. Instead, the Opposition

[4] This Court's recent decision in *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025), is factually different from the allegations here. The *Gabrielli* plaintiff alleged that he expressly rejected the tracking technology at issue, which factually supported a reasonable expectation of privacy more akin to traditionally actionable harms. *Id.* at *8-9. The website at issue also involved user input of highly sensitive healthcare information, distinguishing it from both *Popa* and Penning's complaint. *Id.* at *7. Unlike the *Gabrielli* plaintiff, Penning does not allege that the Website made contrary representations about its treatment of user data, or that he expressly rejected disclosure of such information to third parties. In fact, The Zebra's Privacy Policy disclosed, and Plaintiff assented to, such disclosure. *See* Mot. at 10-11.

asks this Court to ignore those disclosures for two reasons: (1) Plaintiff argues the Court must accept his bare allegation that he did not consent at the pleading stage (Opp. at 6); and (2) Plaintiff argues the Privacy Policy is not adequately presented to Website users who use its tools (Opp. at 9).

First, "[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (quoting *Silver v. Stripe Inc.*, No. 20-cv-8196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (in CIPA case, "[d]efendants may properly challenge [p]laintiffs' allegations regarding lack of consent through the instant motion to dismiss"). The Court need not accept allegations as true, where they contradict matters incorporated by reference or otherwise properly subject to judicial notice.[5] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Nor is the Court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* (citations omitted). So the Court is not bound to blindly accept Plaintiff's bare allegation that he did not consent. And because he does not dispute that the Privacy Policy disclosures do indeed reflect the precise conduct at issue, the question becomes whether the Privacy Policy was sufficiently presented to Plaintiff.

Plaintiff introduces screenshots of the Website tool flow for car insurance quotes, as of August 18, 2025, to argue that the Website did not conspicuously present the Privacy Policy and Terms to users. Opp. at 8; Decl. of Philip L. Fraietta ("Fraietta Decl.") (Dkt. 27-1) ¶ 7. Before addressing the substantive arguments on constructive notice, this approach is flawed for two fatal reasons:

First, the Opposition ignores the home insurance tool. Indeed, Plaintiff seemingly acknowledges that the configuration of that tool's Privacy Policy presentation is adequate. The tool features text at its outset (directly above a "Save & continue" button that must be clicked to proceed through the tool) that "By clicking 'Save & continue' you consent to the Zebra saving the information

[5] The Zebra submitted the Website Privacy Policy and other publicly available portions of the Website, which are relevant to the issue of Plaintiff's consent, as exhibits to the Declaration of Haley Ackerman ("Ackerman Decl.") (Dkt. 26-3) and the Declaration of Christopher James ("James Declaration") (Dkt. 26-8). *See* Ackerman Decl., Exs. C-D; James Decl., Ex. 2. The Zebra requested that the Court consider these documents as the subjects of judicial notice and/or incorporated by reference (*see* Req. for Judicial Notice (Dkt. 26-2)), which Plaintiff has not opposed—indeed he requested additional similar materials also be noticed.

you entered…. You also agree to The Zebra's Privacy Policy and Terms of Service," (with "Privacy Policy" and "Terms of Service" hyperlinks reflected in blue underlined font). *See* Ackerman Decl. ¶ 10; Ex. C at 1. Plaintiff does not challenge this presentation, but rather claims that the presentation of the Privacy Policy and Terms "for *each* quote comparison tool" is "crucial, as it is Defendant's burden to establish that Plaintiff agreed to its terms." Opp. at 8 (emphasis added). In doing so, Plaintiff relies on his pleading deficiencies—his failure to allege what particular tool(s) he used—to avoid the issue of consent. This only further highlights why the pleading deficiencies are critical to evaluation of the FAC, and why it cannot survive in current form.

Second, the car insurance tools also provided constructive notice. The Opposition evaluates Website screenshots from *August* 2025, but those captures are irrelevant to Plaintiff's visit, which occurred in *January* 2025.[6] FAC ¶ 4. Though the Website has been modified since January, what is relevant is how the Website appeared to Plaintiff at the time of his visit, not at the time of counsel's post-hoc investigation several months after filing suit. As authenticated by the Ackerman Declaration, the Motion presented true and correct collections of screenshots of the car and home insurance tools *at the time of Plaintiff's visit to the Website* in January 2025. Ackerman Decl. ¶¶ 7, 9. And at that time, the car insurance tool presented the Privacy Policy and Terms in the same manner as the home insurance tool (which, as noted above, Plaintiff seemingly accepts as effective): text above the tool's first "Save & continue" button clearly states that clicking the button would constitute assent to both the Privacy Policy and the Terms. *Id.* ¶ 10. Plaintiff does not argue these exhibits were inaccurate as of Penning's visit; he merely presents inapposite counter examples from the current Website.

To be sure, the relevant January 2025 comparison tool disclosures comport with every element that Plaintiff argues is necessary for an enforceable "clickwrap" agreement. "California law requires constructive notice for consumers to be bound by contractual terms." Opp. at 7 (citing *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023)). "The webpage must take steps to 'capture the user's attention and secure her assent,' for the terms to be reasonably conspicuous." Opp. at 8 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 948, 856 (9th Cir. 2022)). The January

---

[6] To be clear, The Zebra does not concede any arguments with respect to the August 2025 screenshots. They are simply irrelevant to Penning's claims.

2025 screenshots demonstrate *exactly* that: the Privacy Policy and Terms were presented at the outset of both comparison tools, with a clear disclosure immediately above the "Save & continue" button stating that when a user clicked on the button to proceed, he also agreed to the Privacy Policy and Terms. Ackerman Decl. ¶ 10; Ex. C at 1; Ex. D at 2. Users *cannot* proceed through the tool without giving express consent. *Id.* ¶ 10. Plaintiff's cited case, *Oberstein*, mirrors the January 2025 Website: "users are presented with a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use.' . . . The 'Terms of Use' hyperlink is written in bright blue font, distinguishing it from the surrounding text . . . Based on these features, [defendant's] websites have designs that provide constructive notice of the Terms." 60 F.4th at 515-16.

Again, Plaintiff's *only* argument as to the effectiveness of the Privacy Policy to establish consent is whether it was conspicuously presented to users and he has simply evaluated the wrong page. Plaintiff critically does *not* dispute that the Privacy Policy disclosed the Website's use of Facebook and Google remarketing tools, as well as third parties' collection of user information via cookies, advertising identifiers and other technologies. Mot at 4. Nor does Plaintiff generally dispute that these disclosures sufficiently reflect the alleged conduct in the FAC, or that the Privacy Policy's disclosures were sufficient to put Plaintiff on notice of this conduct.

Plaintiff's argument against transfer suffers the same inadequacy, and fares just as poorly. Plaintiff's only opposition to transfer is that the Terms—and the forum selection clause within—were not conspicuously presented to users in a way that provided constructive notice. Opp. at 22-23. This argument fails for the same reasons: the Website's presentation of the Terms, at the time of Plaintiff's visit to the Website in January 2025, *did* provide constructive notice. Plaintiff does not otherwise challenge the validity of the forum selection clause, and the clause is therefore binding on Plaintiff.

The remainder of this Reply will address additional flaws in Plaintiff's substantive merits arguments, but the Court would be justified in stopping here. As demonstrated over the preceding two sections, Plaintiff is caught in a logical mire. He has not pled sufficient facts about his use of the Website to establish standing—he even attempts to rely on that deficiency to avoid the Privacy Policy and Terms. But if his use of the quote comparison tools is inferred (as would be necessary to establish standing), he has both consented to the conduct at issue and agreed to a forum selection clause. Under

either interpretation of the FAC, the case must be dismissed, or at the very least transferred.

**III. ECPA's crime-tort exception does not apply.**

Plaintiff acknowledges that ECPA's crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." Opp. at 10 (quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (original emphasis)). But Plaintiff's argument that The Zebra "intended to violate various tort and criminal laws through the interception of Plaintiff's communications" (Opp. at 10) falls short. The FAC repeatedly alleges that The Zebra's conduct is motivated by monetary gain (*see, e.g.*, FAC ¶¶ 42, 104-05, 111-12), and such purposes clearly are not criminal or tortious. Plaintiff does not address either *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) or *Lakes*, cited in The Zebra's Motion, which both dismissed ECPA claims where the defendants' purposes were economic benefit. *See Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (alleged interception was for defendant's market research and consumer analysis, not to violate HIPAA); *Lakes*, 777 F. Supp. 3d at 1057. Instead, Plaintiff cites to *R.C. v. Walgreen Co.* for the proposition that the crime-tort exception may apply "even where a defendant is arguably motivated by monetary gain." 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024). But in *Walgreen*, the Court only concluded tortious intent was adequately pled after finding plaintiffs had plausibly stated a claim for *invasion of privacy* of their sensitive *health* information (not alleged here)—not because of any statutory violation. *See id*. at 901-02. And as the court stated in *Lakes*, *Walgreen* and similar out-of-district cases alleging HIPAA violations by healthcare companies are not persuasive. *Lakes*, 777 F. Supp. 3d at 1057-58. The crime-tort exception "cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (citation omitted).

Moreover, The Zebra has not committed any independent crime or tort. Plaintiff suggests The Zebra has violated IIPPA, GLBA, or CalFIPA, but the Opposition fails to present actual argument or precedent on the issue and does not address any of the Motion's arguments and authorities. First, use of a free online insurance estimate comparison tool is not an "insurance transaction" that would be subject to IIPPA. "Insurance transactions" would require an actual application for insurance or

determination of eligibility. Mot. at 20. Nowhere in the FAC does Penning allege that he went beyond viewing preliminary insurance estimates. The FAC's overbroad class definition similarly encompasses users whose personal information was disclosed to third parties when simply "comparing a quote for insurance on the Website." FAC ¶¶ 113-14. It is not plausibly alleged that The Zebra's process of compiling insurance quotes constitutes an application for insurance or an eligibility determination.[7] An actual application would need to be submitted to the chosen carrier, *after* the user compares quotes. By comparing quotes, the user is merely window shopping. They are testing the waters without any commitment and without providing any further information the specific carrier may need for eligibility determinations. For similar reasons, The Zebra's provision of a quote is not a representation that the particular carrier will deem the Website visitor eligible—those determinations need to be made by the actual carrier. Plaintiff does not refute this.

Penning is not a "consumer" under either the GLBA or CalFIPA—as highlighted in The Zebra's Motion (Mot. at 12 n.7), but largely ignored in the Opposition. For one, the FAC never alleges that The Zebra is a "financial institution" that is covered by either statute. And, in any event, both statutes define a "consumer" as an individual "who obtains, from a financial institution, financial products or services." 15 U.S.C. §§ 6802(a), 6809(9); Cal. Fin. Code §§ 4052(a)-(b), (f). Plaintiff attempts to distinguish *Allen v. Quicken Loans Inc.*, No. 17-cv-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018), which dismissed an ECPA claim after finding the plaintiff was not a GLBA "consumer," by arguing the point was conceded in *Allen*. Opp. at 10. But the Opposition provides no authority to support that Plaintiff is a "consumer." Obtaining a free comparison of insurance quotes via the Website tools is not a financial service, and Plaintiff cites no precedent or statute establishing otherwise. Nor does Plaintiff allege that he procured a financial product from The Zebra by purchasing an insurance policy through The Zebra. Penning is not a consumer, so these statutes do not apply to him and cannot possibly form the basis of an ECPA crime-tort exception.

---

[7] As stated in Section 8 of The Zebra's Terms, The Zebra merely provides a tool for the user to get estimates and quotes from third party providers. The Zebra is not responsible for the availability of third party offerings and "makes no guarantees regarding the quotes, fees, terms, rates, coverage, or services offered or made available" by third party providers. *See* Ackerman Decl., Ex. A at 8.

**IV. Plaintiff has not alleged interception of "content" for a wiretapping claim.**

The Opposition broadly asserts that "third parties clearly see both Plaintiff's identity and information disclosed" through the Website. Opp. at 12. But this grossly mischaracterizes the FAC's allegations (and reality). What third parties are allegedly able to capture on the Website is extremely limited—certainly not the entirety of a user's quote tool entries. The Opposition appears to confuse the Motion's categorical discussion of the different types of information at issue (Mot. at 13-14), but apparently concedes that the categories of technical browser information, auto-generated information, marketing identifiers, and hashed user entries do not qualify as content. Opp. at 11-12. Plaintiff instead relies exclusively on the captured URLs and a single sub-parameter in the use-oriented "form_start" Google Analytics event to satisfy the statute.

Plaintiff asserts if URLs "reproduce a person's personal search engine queries, they are contents." *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023). The Opposition then goes on to claim that the FAC has alleged URLs with user-generated search queries. Opp. at 13. However, none of the URL examples provided in the FAC feature search queries inputted by a user, and the Opposition does not identify any such inputs in the examples. FAC ¶¶ 79-80, 106-07. The URLs disclose nothing beyond the type of tool the Website visitor has used.

Google Analytics' "form_start" event (featured in FAC ¶ 108) creates a use-oriented record of only the visitor's first interaction with the comparison tool—a single button click to inform The Zebra that the user actually began the form. No information about the event is reflected in The Zebra's URLs. Additionally, what (if anything) the event captures is entirely dependent on the specific tool used and order of interactions with that tool. In the specific counsel-generated examples alleged in the FAC, event sub-parameters apparently registered the use of a radio button for the general type of quote being sought—new or replacement car insurance, and a generic residence type. FAC ¶ 108. The "form_start" event is not alleged to capture any user-generated text inputs, or to even be capable of capturing any further responses. Moreover, Plaintiffs do not deny that they had to manipulate the tools in an unnatural way in order to generate the exemplar screenshots provided in the FAC.

Not only are these hypothetical captures too limited to qualify as content, but the FAC also lacks any allegations regarding what, if any, of *Penning*'s communications was specifically captured.

The Opposition acknowledges that what matters is "how much information" was revealed by the alleged disclosures to third parties. Opp. at 12. But because Penning fails to allege anything specific about his own interaction with the Website, it is impossible to know what (if anything) was captured or disclosed. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) (hypothetical disclosures did not provide sufficient factual support that any "content" was intercepted).

Plaintiff also fails to distinguish *King v. Hard Rock Cafe Int'l (USA), Inc.* on this issue. They argue the case is irrelevant because it does not relate to "the disclosure of insurance inquiries." Opp. at 13. Whether a case relates to insurance has no bearing on whether a disclosure amounts to "content." In *King*, the court found that "guest record" information (*e.g.*, addresses and email addresses) and "button clicks" only constituted "record information" for purposes of CIPA. No. 24-cv-1119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (citations omitted). The Court also dismissed because (as here) Plaintiff failed to allege she had actually "conducted the searches or visited the webpages provided in the [complaint's] examples." *Id.* This Court should similarly find that Plaintiff has failed to allege the interception of any of his communication content.

## V. <u>The Zebra did not knowingly assist third parties in violating CIPA § 631(a).</u>

As the Opposition acknowledges, § 631(a) "require[s] some level of knowledge and intent . . . At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). The Zebra in no way concedes that what Google and Facebook collect on its site constitutes a violation. Given Plaintiff's focus on the information captured in the sub-parameters of Google's "form_start" event, however, Plaintiff critically does not allege that The Zebra knew the "form_start" event—an event aimed at capturing use-oriented activity on its website—would result in Google's capture of more detailed sub-parameters. Plaintiff does not dispute, nor even attempt to address, that Google's own description and guidance regarding the "form_start" event fails to disclose those sub-parameters are collected. Mot. at 18 n.13. This is not a matter of The Zebra directing a data capture, but not appreciating its legal significance—if any exists. Plaintiff fails to plausibly allege The Zebra had knowledge or intent with

respect to the data capture itself. Therefore, he cannot establish a § 631(a) violation by The Zebra.

**VI. <u>Plaintiff has not alleged a "confidential communication" under CIPA § 632.</u>**

The plain language of § 632 defines a "confidential communication" as a communication where any party "desires it to be confined to the parties thereto." Cal. Pen. Code § 632(a), (c). As an initial matter, Penning does not dispute that the Privacy Policy discloses information sharing with Google and Facebook—and, as described above, if Penning is inferred to have used the Website tools to send *any* communication, he necessarily assented to the Privacy Policy first. *See supra* Part II.

Nor does Plaintiff dispute that users expected their Website submissions to be shared beyond The Zebra, generally. A communication someone affirmatively expects to be shared is, by definition, not "confidential." The Zebra's visitors do not expect their quote tool submissions to be "confined to the parties thereto"—the Website's entire purpose is to share the information with third party insurance companies and professionals. The Opposition "takes issue with his confidential insurance communications with additional parties who are not insurance carriers and other professionals—Facebook and Google—who play no role in the gathering and comparing of insurance quotes." Opp. at 16 (internal quotations omitted). But this does not comport with the statute's definition of a "confidential communication."[8] "Statutory interpretation under California law begins with the words themselves, giving them 'their plain and commonsense meaning,' because the words of a legal text 'generally provide the most reliable indicator of [the enacting body's] intent.' If the 'language is clear and unambiguous our inquiry ends.'" *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020) (quoting *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103 (2007)). The legislature had the ability to define "confidential communication" more broadly, but unambiguously limited its scope to communications that were intended to be confined to the immediate participants thereto.

Additionally, the Opposition provides no authority to enhance confidential treatment for either the type of interaction or minimal amount of information at issue here. The FAC concerns basic use of a freely available estimate tool—this was not a protected "insurance transaction." Though The

[8] The FAC also makes no such distinction among third parties when defining the relevant class. Plaintiff purports to represent a class of individuals who had their PII or protected information "disclosed to Facebook, Google, or other third-party entities, when applying for or comparing a quote for insurance on the Website" (FAC ¶ 113), when the Website's entire purpose is to share user's information with third party insurance entities.

Zebra may in certain circumstances act as an insurance broker and sell policies, or deploy "licensed agents to help users select the right policy" (Opp. at 16-17), it is not alleged to have done so here. Neither Plaintiff nor the class definition alleges use of any such services or purchase of any product. Indeed, the information captures at issue only pertain to the preliminary comparison tools. Users that wish to proceed with any insurance transaction must select a specific quote (FAC ¶ 37) and then take further steps with that provider (who would accept applications and make eligibility determinations).

And irrespective of whether certain uses of The Zebra's services are entitled to enhanced protection, the extent of information allegedly captured by Facebook and Google is not. Again, the FAC does not plausibly allege capture of a visitor's estimate submission. It alleges only disclosure that (1) a user has engaged with a particular quote comparison tool—the mere fact they are shopping; and (2) information concerning the first form button a user clicks. Even the proffered examples are limited to singular inferences about the general type of insurance being sought—new or replacement car insurance, and generic residence type. This does not constitute the type of transactional communications contemplated by Plaintiff's proffered insurance statutes.

**VII. <u>Plaintiff does not allege derivative liability under CIPA § 632.</u>**

The Motion argues that Plaintiff's cause of action under § 632 is not actually directed at The Zebra. Mot. at 21. The Zebra is not mentioned anywhere in that cause of action (FAC ¶¶ 160-168), which only claims Facebook and Google violated § 632. The Opposition asserts § 632 "implicitly also allows for derivative liability." Opp. at 19 (citing general aiding and abetting provisions of Cal. Pen. Code § 31). But Cause III alleges no such liability, which the Opposition cannot cure. Even if derivative liability was alleged, deficiencies concerning The Zebra's knowledge and intent (discussed above) would apply just as forcefully. *See supra* Part V.

**VIII. <u>The Opposition misses the mark on each element of invasion of privacy.</u>**

**A. <u>No legally protected privacy interest in the limited information at issue.</u>**

The Opposition claims that The Zebra has revealed highly personal information about Plaintiff "including, inter alia, (1) who Plaintiff is, (2) the fact that Plaintiff is seeking insurance, (3) whether or not Plaintiff is insured, and (4) what type of insurance Plaintiff is seeking." Opp. at 19-20. The same pleading deficiencies already discussed at length similarly infect this claim: Plaintiff has not

alleged that he, himself, communicated any of this information to The Zebra, let alone that The Zebra disclosed this information about him to Facebook and Google. The FAC remains entirely hypothetical, without Plaintiff alleging any specific use of the Website. *See supra* Part I.

Even hypothetically, the Opposition cites to no case law supporting that this information is legally protected by a privacy interest. There is only a cognizable privacy interest in information that is sufficiently sensitive and confidential. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 (1994). Simply asserting that the information generally exposes Plaintiff's intentions as a consumer (Opp. at 20) is not sufficient to establish a protected privacy interest. *See, e.g., Zbitnoff v. Nationstar Mortg., LLC*, No. 13-cv-5221-WHA, 2014 WL 1101161, at *4 (N.D. Cal. Mar, 18, 2014) (claim dismissed for failure to specify what private information was collected in applying for mortgage).

**B. <u>No reasonable expectation of privacy in the information.</u>**

The Opposition does not dispute that the Website's Privacy Policy disclosures preclude an expectation of privacy, only that Plaintiff "had no reason to know [it] existed." Opp. at 21. This assessment is again based on counsel's post-hoc evaluation of the Website's appearance at the wrong point in time. As discussed *supra*, Plaintiff *did* have constructive notice of the Privacy Policy, and therefore he cannot plausibly argue he had a reasonable expectation of privacy. This ends the inquiry.

The Opposition makes two other arguments, both inapposite. It first introduces the term "insurance decision" as a supposedly relevant threshold for an expectation of privacy—though citing no precedent defining the term or supporting its significance in this analysis. Opp. at 20. Regardless, neither Plaintiff nor the defined class are alleged to have made an "insurance decision." As discussed *supra*, no insurance transaction takes place when a user uses a free quote comparison tool. The allegations do not support that Plaintiff (or anyone) made a "decision" about what insurance to purchase, from whom, on what terms—or even that they decided to purchase insurance at all. The only inference possible, and indeed all that is alleged, is that Plaintiff is shopping for insurance.

Next, Plaintiff cites to *In re Facebook, Hammerling v. Google LLC*, 615 F. Supp 3d 1069 (N.D. Cal. 2022), and *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023), to suggest "the overall accumulation of information from Plaintiff in the aggregate violates Plaintiff's reasonable expectation of privacy." Opp. at 21. Citing this line of cases makes no sense in the context

of the minimal amount of information at issue, here. Each involved massive captures of cross-site Internet browsing history that, in the aggregate, ran contrary to users' expectations of privacy. The discrete, minimal information alleged to be disclosed by The Zebra—limited to sanitized URLs, a single "form_start" event sub-parameter, and unprotected identifiers—is completely distinguishable.

**C. No "surreptitious data collection" to satisfy the "highly offensive" element.**

The Opposition first argues the Court should not evaluate the final element of an invasion of privacy claim—whether there was an egregious breach of social norms—at the motion to dismiss stage. Opp. at 21. This is incorrect. In evaluating this prong on a motion to dismiss, the Court engages in a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 606; *see also Hammerling*, 615 F. Supp 3d at 1091 (dismissing common law and constitutional privacy claims because plaintiffs did not plausibly allege conduct was "egregious" or "highly offensive").

Plaintiff then ignores the Motion's authority regarding what qualifies as "highly offensive" conduct, and instead cites to authority that is again inapposite. Each case cited by Plaintiff concerns express representations by the respective defendant about how a user's information or activity would be treated, which that defendant then allegedly violated. Opp. at 22. While this type of "surreptitious" conduct is a common fact pattern to satisfy the "highly offensive" element in invasion of privacy claims, it is not alleged to have occurred here. The FAC does not allege The Zebra made express promises or otherwise set an affirmative expectation that information would not be shared with Facebook and Google. Indeed, the Privacy Policy disclosures state just the opposite. The Motion's authorities demonstrate that the type of limited disclosures that occurred here amount to "routine commercial behavior," not an egregious breach of social norms. The claim, as with all others in the FAC, should be dismissed.

Dated: September 19, 2025

VINSON & ELKINS LLP

By: *Christopher W. James*
Christopher W. James

*Attorney for Defendant*
*InsuranceZebra, Inc., d/b/a The Zebra*