UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STACY PENNING,

Plaintiff,

v.

INSURANCEZEBRA, INC.,

Defendant.

Case No. 25-cv-03531-WHO

**ORDER GRANTING MOTION TO TRANSFER**

Re: Dkt. Nos. 49, 50

Based on additional information provided by plaintiff Stacy Penning in the Second Amended Complaint and the documents provided by defendant InsuranceZebra, Inc. ("The Zebra"), The Zebra renews its Motion to Transfer venue and its Motion to Dismiss.  Dkt. Nos. 49, 50.  The record is now sufficient to show that Penning was on inquiry notice of The Zebra's Terms of Service when he used The Zebra's automobile insurance comparison tool.  Second Amended Class Action Complaint ("SAC," Dkt. No. 46) ¶ 108.  Therefore, I GRANT the Motion to Transfer to the Western District of Texas and will defer ruling on the Motion to Dismiss as a result.

## I.    LEGAL STANDARD

"Under an inquiry theory of notice, contracts are formed between website users and operators only where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

"The first step of the inquiry-notice internet contract formation test asks whether 'the website provides reasonably conspicuous notice of the terms to which the consumer will be bound' . . .  This test has two aspects: the visual design of the webpages and the context of the transaction. Both aspects 'should be considered together.'" *Godun*, 135 F.4th at 709 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1018 (9th Cir. 2024) and *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025)).  Visual conspicuousness looks to various

factors "such as the location of the advisal on the webpage or the font size, color, and contrast (against the page's background)" *Godun*, 135 F.4th at 709, as well as whether the disclosure language is otherwise prominent or hidden on a cluttered page. *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 473 (2021) ("These criteria include: (1) the size of the text; (2) the color of the text as compared to the background it appears against; (3) the location of the text and, specifically, its proximity to any box or button the user must click to continue use of the website; (4) the obviousness of any associated hyperlink; and (5) whether other elements on the screen clutter or otherwise obscure the textual notice.").

"Together with the visual prominence of an advisal," courts must also consider the "full context of the transaction" including whether the type of transaction contemplates entering into a "continuing, forward-looking relationship that would be governed by terms and conditions." *Godun*, 135 F.4th at 710 (citing *Keebaugh*, 100 F.4th at 1017).

## II.    INQUIRY NOTICE OF TERMS OF SERVICE

### A.    Visual Conspicuousness

The Zebra submits evidence of exactly what Penning would have seen when he used The Zebra's automobile insurance comparison tool in January 2025. *See* Declaration of Felix Del Rosario, Ex. D. Dkt. No. 50-6 at ECF pg. 3. The disclosure language, including the agreement to The Zebra's Privacy Policy and Terms of Service, is immediately above the "Save & continue" button.[1] The Terms of Service provide exclusive venue in Travis County, Texas. *Id*. Ex. A, Dkt. No. 50-3 at ECF pg. 14.

Considering the page as a whole, I find that visual conspicuousness has been satisfied. The page is uncluttered, and the disclosure language appears in black font against the page's light grey background and is placed directly above the action "Save & continue" button. The Privacy Policy and Terms of Service are capitalized, underlined and set off in the blue font typical to denote

[1] The full text of the disclosure language is: "By clicking 'Save & continue,' you consent to The Zebra saving the information you entered and sharing it with insurance carriers and other insurance professionals so you can get the most up-to-date quotes, no matter what device you're using. Additionally, carriers and insurance professionals may use this to obtain information about your credit history. You also agree to The Zebra's Privacy Policy and Terms of Service." Dkt. No. 49-7 at ECF pg. 3.

United States District Court
Northern District of California

hyperlinks.  The font of the disclosure language is smaller than over half of the other font on the page and some of the other font is bolded in black.  It is, however, the same or materially similar to the size and color font used in the descriptive text elsewhere on the page.  Viewing the page as a whole, the Terms of Service are sufficiently visually conspicuous.

Each of the cases Penning relies on to argue against visual conspicuousness addresses materially different design choices that led those courts to conclude that inquiry notice was not satisfied.  *See, e.g., Rocha v. Urb. Outfitters, Inc.*, No. 23-CV-00542-AMO, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) (cluttered purchase page, disclosure present in small grey font that was much smaller than most other elements on the page, and the Terms language only underlined and not set off in typical blue to denote a hyperlink); *Schlueter-Beckner v. SimpliSafe*, Inc., No. 3:25-CV-01764 (CRB), 2025 WL 2162948, at *3 (N.D. Cal. July 30, 2025) (disclosure in small grey font less visually prominent that other elements, only on the final page of webform "off to the side," and underlined only); *Edwards v. MUBI, Inc*., 773 F. Supp. 3d 868, 882 (N.D. Cal. 2025) (cluttered page, disclosure not in blue font to denote hyperlink, or in much smaller font and user would have to scroll down past action button).

Here the page is uncluttered.  While the disclosure language is in a smaller font than some elements, it is the same size as other elements on the page.  Most significantly, the disclosure language is immediately above the "Save & continue" action button, and the Privacy Policy and Terms of Service are capitalized, underlined and set off in blue font, typically denoting a hyperlink.  The Terms of Service hyperlink and the user's agreement to it by "clicking 'Save & continue'" button immediately below it satisfied the visual conspicuousness test to establish inquiry notice.

On the second issue, the nature of the transaction, Penning argues that because he was using the site merely to compare automobile insurance quotes, he cannot have been expected to be bound by the Terms of Service.  Oppo. at 2-3.  But the undisputed purpose of this site – as confirmed by the disclosure language – is that the user's information will be shared at least with insurance carriers and insurance professionals and that different quotes will be returned.  Penning concedes that The Zebra "works with over a hundred insurance companies to offer insurance

United States District Court
Northern District of California

3

policies to users, and Defendant has a team of over a hundred licensed agents to help users select a policy." SAC ¶ 30. In this context, with the promise of a back-and-forth exchange of information and potential broker relationship, the nature of the transaction supports inquiry notice.

### B.    Assent to the Terms

Penning also argues that the three sentences of the disclosure language, ending with the Privacy Policy and Terms of Service, is ambiguous because the "By clicking 'Save & continue'" language is present only in the first sentence of the disclosure and the "You also agree to The Zebra's Privacy Policy and Terms of Service" is by itself in the third sentence, with a different topic in between. *See* Dkt. No. 49-7. But The Zebra points out that its service exists to collect a user's information and share it with others to get insurance quotes and possibly enable The Zebra's agents to help a user select a policy. A reasonable and rational user of the service would see that the disclosure language: the first and second sentences explain exactly what types of information will be shared with third parties and the third sentence provides links to the Privacy Policy and Terms of Service.

Given the context and the purpose of The Zebra's website, the "By clicking 'Save & continue'" language is connected to and clearly relevant to the "You also agree" language in the third sentence. There is only one "action" key that brings a user to the next page of the site "Save & continue" immediately beneath the disclosure language. Assent based on inquiry notice has been established.

The forum selection clause in the Terms of Service mandates that the exclusive venue for litigation is in Travis County, Texas. Accordingly, this case is hereby TRANSFERRED to the Western District of Texas.

**IT IS SO ORDERED.**

Dated: March 30, 2026

William H. Orrick
United States District Judge

4